MATTHEW WATSON, TRUSTEE, ET AL. *v.* ALVA WOODS ET AL.

In construing a devise, the intent of the testator must govern, if it can be ascertained from the language of the will; and effect must be given to that intent, if the rules of law will permit.

Where a testator, after devising to Trustees, ordered that the rents and profits of the estate be paid over by them to his married daughter during her life, and then further provided as follows: "After the decease of my said daughter Mary, I devise the said premises unto the children of my said daughter Mary and their issue, in the same manner as they would have taken the same if the same had been devised unto my daughter Mary and her heirs, but free from all tenancy by the courtesy: But if there should be no child of my said daughter, nor issue of any such child living at her decease, or in case of the subsequent death of all such children, leaving no issue, then I devise the same unto my children Henry, Eliza Ann and Abigail, and to their respective heirs and assigns forever, to be equally divided between them": *Held,* That it was the testator's intent that the estate pass to the descendants of the said Mary, so long as there were any in being: That until after her decease, the children of said Mary could have no vested interest in the estate, nor power to convey the same in fee or in mortgage, nor to create a lien thereon in favor of any person under "an act securing to mechanics and others, payment for repairs and improvements by them made on real estate."

IN EQUITY.—A sufficient statement of this case, is contained in the Court's opinion.   The construction of the devise cited from the will was the only point in question: *Ames* and *F. E. Hoppin* for the complainants, contending for the construction which the Court has here

given to it: *Potter* and *Lapham* for the defendants, contra.

BRAYTON, J.—This bill is brought by Matthew Watson, surviving trustee of certain estate mentioned in the bill, Mary Rivers, a cestui-que-trust, under the will of Seth Wheaton, late of Providence, deceased, Geraldine Rivers, the widow of George Rivers, late of said Providence, deceased, (which said George was one of the children of said Mary Rivers) and by George Rivers, Mary Rivers and Genevieve Rivers, infant children of the said George Rivers, deceased, against the defendants, Alva Woods, Charles T. James, and his assignee Lyman B. Frieze, Avery Pettis, and his assignee Camden Dike, and George R. Russel, mortgagees under said George Rivers, deceased, of said estate, and James H. Butler and William H. Carder, who claim a lien on said estate under the lien law, for instruction to be given to the said trustee.

The bill states that one Seth Wheaton, deceased, in and by his last will and testament duly proved, made among others the following devise, viz:

"*Item.*—I give and devise unto my said son Henry Wheaton and unto Matthew Watson, the husband of my daughter Abigail, and unto the survivor of them, and after the decease of such survivor, unto such person or persons as he may have appointed by deed or will, or, and in default of such appointment, or of persons to execute the same, then unto such person or persons as the Judges of the Circuit Court of the United States within the Rhode Island District for the time being may from time to time, as often as it may become necessary, appoint, for and during the life of my daughter Mary, the wife of Thomas Rivers, of said Providence, and until the performance and termination of the trusts hereinafter mentioned, and no longer," [two distinct estates,—one of them situate on the west side of North Main street, in Providence, particularly described.] "To have and to hold the aforesaid described premises and appurtenances, to them, the said Henry Whea-

ton and Matthew Watson, and the survivor of them, and the person or persons to be appointed as aforesaid, upon such trusts, and for such purposes and intents as are hereinafter mentioned, that is to say, in trust, that they, the said trustees, shall receive the annual rents and profits of the said estates, and shall, during the life of my said daughter Mary, pay over the same to her quarter-yearly, or to such person or persons as any writing signed with her proper name shall from time to time direct and appoint, notwithstanding her present or any future coverture, provided the said direction be for such part of the same as may be due at the time of such direction, to the intent that the said rents and profits may be at her own sole and separate disposition, and for her own use and benefit, and the receipt of the said Mary, signed with her own proper hand, shall be a good and sufficient discharge for so much of the said rents and profits as shall be therein acknowledged to have been received. And in case the said Thomas Rivers shall survive my said daughter Mary, then my will and direction is, that the said trustees shall receive and pay over unto the said Thomas Rivers, during his life, one-third of the said rents and profits. And after the decease of my said daughter Mary, I devise the said premises, should the said Thomas Rivers not then be living, otherwise two-thirds thereof, and after his decease the remaining one-third thereof, unto the children of my said daughter Mary and their issue, in the same manner as they would have taken the same, if the same had been devised unto my said daughter Mary and her heirs, but free from all tenancy by the curtesy: Provided, however, that such child or children of my said daughter Mary, or the issue of any such child or children as at the time of her decease may be under the age of twenty-one years, shall not be entitled to the possession of the portion of the said premises to which he or she may be entitled at the decease of the said Thomas and Mary Rivers as aforesaid, until his or her arrival at the age of twenty-one years, but such portion shall remain in the possession of the said trustees until the arrival of the person entitled to the same as aforesaid, to the age of twenty-one years, and no longer, and in the meantime, the said trustees shall apply so much of the said rents and profits as may accrue thereon, as may be necessary, unto the maintenance of the persons respectively entitled to the same, and shall account with him or her, his or her executors or administrators, for the residue, if any. But if there should be no child of my said daughter, nor issue of any such child, living at her decease, or in case of the subsequent death of all such children, leaving no issue, then I devise two-thirds of the same premises, if the said Thomas Rivers be then living, otherwise the whole, and (if then living) after his decease, the other one-third thereof, unto my children, Henry, Eliza Ann and Abigail, and to their respective heirs and assigns forever, to be equally divided between them."

The bill then, further states, that the complainant, Matthew Watson, is now the sole surviving trustee under said devise: that George Rivers, (one of the children

Matthew Watson, Trustee, et al. *v.* Alva Woods et al.

of the said Mary Rivers referred to,) now deceased, in his life-time executed four several mortgages upon his interest in the property devised, viz: one to Alva Woods, dated June 5th, 1855; one to Charles T. James, dated October 12th, 1850; one to Avery Pettis, dated August 20th, 1853; and one to George R. Russel, dated July 1st, 1853, copies of which are annexed to the bill: that during the life-time of said George Rivers, certain repairs and improvements were put upon a portion of the estate devised, viz: on that portion situated on the west side of North Main street in Providence, by the respondents, James H. Butler and William H. Carder, who claim a lien therefor upon the supposed interest of the said George Rivers in said estate, under the provisions of an act securing to mechanics and others payment for repairs and improvements by them made on real estate, passed July, 1847: that said George Rivers had an undisputed title to another undivided fourth part of the estate on the west side of North Main street, derived from Ann Wheaton, a devisee in said will: that said Alva Woods, one of the mortgagees aforesaid, has advertised the said estate mortgaged to him for sale, under the power contained in said mortgage: that there is a cloud upon the title of the said George Rivers, and great doubt as to the quantity and nature of his interest in said estates, arising out of the ambiguity of the language employed in said will: that without some authoritative construction, purchasers cannot know whether said George Rivers had any interest in and to said estates devised in trust, which he could sell or mortgage against his issue, and if he had any interest therein, the same is liable to be sacrificed, and the complainant and the creditors of said George, and all parties interested in said

estates may be injured: that the said trustee is unable to determine, in the event of the death of said Mary Rivers, whether or not he shall continue to hold said property in trust for the benefit of the issue of said George Rivers: that the defendants pretend that said George Rivers had a perfect title to said one half part of said estates, subject only to the life estate of said Mary Rivers and Thomas Rivers therein, and had full power to convey the same to said mortgagees, and that his issue had no interest, except as they might have inherited from him: *Whereas*, the complainants charge that by a proper construction of said devise, the said George Rivers had no interest therein which he could convey or mortgage, but only an estate contingent upon his surviving the said Mary Rivers. And the bill prays that the trustee may be instructed whether or not he shall continue to hold said estates in trust, after the decease of the said Mary Rivers, for the benefit of the issue of the said George, or shall convey the same to any purchasers thereof, at any sale made under said mortgages, after the death of said Mary; and that the Court will decide whether said George Rivers had any interest in said estates devised in trust, which passed to the said mortgagees, or upon which the said complainants, under the lien law, have any claim; and what was the nature and quantity of interest of the said George Rivers therein, if any.

In order to give the instructions applied for by the trustee in this case, it becomes necessary to give a construction to this devise; and in arriving at the proper construction, the intent of the testator must govern, if it can be discovered from the language of the will, and effect must be given to that intent, if the rules of law

Matthew Watson, Trustee, et al. v. Alva Woods et al.

will permit.    What, then, was the intent of the testator, as expressed in the language of this devise?

He first gives the estate to trustees, to hold until the trusts mentioned in the devise are performed and terminated.    Those trusts were to receive the rents and profits of the estate, and to pay over the same to his daughter, Mary Rivers, during her natural life, to her sole and separate use, and if her husband, Thomas Rivers, should survive her, then to receive and pay over to him, one third of such rents and profits during his life; and further, that if either of the children of his daughter, or either of the issue of such children, should be within the age of twenty-one years at her death, the trustee to receive the rents and profits of that portion to which such child, or issue of such child, would be entitled, upon the death of Mary Rivers, and apply the same to the maintenance of such child or issue.

Thus far the testator has given an estate for life to his daughter, and a contingent estate for life in one-third thereof to Thomas Rivers, her husband, and no more.

After the termination of the life estate, thus carved out, the testator proceeds to dispose of the remainder, as follows:

" And after the decease of my said daughter Mary, I devise the said premises (should said Thomas Rivers be then living, otherwise two-thirds thereof, and after his decease the remaining one-third thereof,) unto the children of my said daughter Mary, and their issue."

Had the devise ended here, there might have arisen the question whether the intent was that the children should take as purchasers, and their estate be controlled by the word issue, as a word of limitation, and

Matthew Watson, Trustee, et al. *v.* Alva Woods et al.

to give them an estate tail in remainder. But to leave no question upon these words, " children and their issue," he proceeds to say, they are to take " in the same manner they would have taken the same, if the same had been devised to my daughter Mary *and her heirs*.

They are to take the estate in the same manner they would have inherited a fee simple estate from their mother; in the same manner as if they were her heirs. They are to take the same proportion of the estate respectively, as if they were her heirs, but nevertheless, they are no to take *as heirs:* not to be heirs to this estate, though they must be such persons as might have been heirs to it, but that the mother had only an estate for life, and they must also be living at her death. In order to give effect to these words, the persons who are to take must stand related to Mary Rivers, as heirs, at the time of her decease.

This is evidently the intent of the testator, as is made more apparent by the subsequent provision: " But if there should be no child of my said daughter, nor issue of any such child, living at her decease, or in case of the subsequent death of all such children leaving no issue," then to go to other children of the testator.

He intended the estate should pass to the descendants of his daughter, so long as there were any in being. He is now using language pointed to a definite time, the death of his daughter. That language evidently contemplates the estates vesting at that time in the descendants of his daughter, such of them as were then living, and he is now limiting the estate which they take to the issue of their bodies respectively. This would have been unnecessary and superfluous, upon the idea

that he had intended a fee simple or fee tail in the daughter, or either of these estates in the children only, in the former part of the devise. If the word issue had been intended as a word of limitation and to create a fee tail, all the succeeding words of the devise might have been omitted, as they add nothing whatever to the effect. The word issue would have comprehended the whole.

It is quite evident, we think, that the word was used in the same sense as the word children, and if he had used the words, their children and grand-children, or descendants, instead of the technical word issue, the sense would have been the same.

But with the words substituted, the whole would be construed as words of purchase, as a description of the persons who were to take in remainder, after the termination of the life estate. Still, it was necessary to provide that they should take as if they were heirs; for without these words, they would take *per capita*, the children and their children together, and so, this result, which was contrary to the testator's intent, is to be avoided by providing that they shall take as if they were heirs of the mother, so that the issue living of the children shall take by representation only the estate which the deceased child would have taken.

Upon this construction of the devise, the children of Mary Rivers have no vested estate during her life, and no remainder in this estate can vest until her death; whence it follows, that George Rivers, now deceased, had no power to convey in fee or in mortgage the said estate, or any portion thereof, or to encumber the same in any way, and that no lien could by him be created thereon in favor of any person, under the lien act, so called.

And we must, therefore, instruct the trustee, that it is his duty to continue to hold said estate in trust during the life time of Mary Rivers, and from and after her decease to continue to hold in trust so much of said estate as shall vest upon her decease in any of the descendants of Mary, then within the age of twenty-one years, and until they respectively arrive at the age of twenty-one years.